William G. **MANAX, M.D. and Manax Medical and Surgical Clinic, a Texas Partnership d/b/a Oak Street Medical Clinic, Plaintiffs–Appellants,**

v.

Lanelle L. **McNAMARA, Rod S. Squires, Dale D. Williams, Denise Gamino, Cox Enterprises, Inc. d/b/a Cox Texas Publications, Inc., Sue Pescaia, Cechoslovak Publishing Company, Inc. d/b/a The West News, Defendants–Appellees.**

No. 87–1408.

United States Court of Appeals,
Fifth Circuit.

April 21, 1988.

---

Peter H. Fulton, David L. Whaley, Hurst, Tex., for Manax, et al.

Marshall M. Searcy, Lori B. Finkelston, Dallas, Tex., for McNamara.

Jackson, Walker, Winstead, Cantwell & Miller, John L. Lancaster, III, S. Cass Weiland, Dallas, Tex., for Squires and Williams.

David H. Donaldson, Jr., R. James George, Jr., Austin, Tex., for Gamino, and Cox Enterprises, Inc., etc.

Noley R. Bice, Jr., Waco, Tex., for Pesica and Cechoslavak Pub. Co.

David H. Donaldson, Jr., Elizabeth A. Crabb, Austin, Tex., for Cox Enterprises, Inc., et al.

Before THORNBERRY, GEE, and POLITZ, Circuit Judges.

THORNBERRY, Circuit Judge:

Dr. William G. Manax and his clinic ("Manax") brought this action against Lanelle McNamara, an attorney and the mayor of Waco, Texas; two other Waco attorneys associated with McNamara; Cox Enterprises, the publisher of newspapers in Austin and Waco; Cechoslovak Publishing,

the publisher of *The West News*, a newspaper in West, Texas; Sue Pescaia, the owner of *The West News;* and Denise Gamino, a reporter for Cox. Manax alleged violations of civil rights laws, 42 U.S.C. §§ 1983, 1985(2)–(3), 1986, and the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968; he also alleged pendent state law claims for breach of contract, libel, slander, and tortious interference with business. The district court dismissed Manax's claims against all defendants. We believe the district court, 660 F.Supp. 657, correctly ruled that Manax failed to state a claim, and therefore we affirm.

## I.

Manax's allegations of wrongdoing by the defendants are exceedingly complex. Because we must evaluate the district court's decision that these allegations do not make out a claim, we restate them in detail.

Manax alleges in general that the defendants formed an organization whose purpose was to destroy his medical reputation, to deprive him of his license to practice medicine, and to extort money from him. In Manax's view, the origin of the defendants' animus toward him was Manax's 1980 effort to remove Dr. Emsley Davis from the staff at West Community hospital. Dr. Davis, to prevent his removal, had sued in federal court. Davis was represented in that suit by a defendant in the present case, Lanelle McNamara. Retaliation for Manax's attempt to remove Davis from the staff, Manax says, was McNamara's motive for establishing an organization to injure Manax. As the "kingpin" of the organization, McNamara directed and encouraged the organization's many activities against Manax.

First, Manax alleges that McNamara made several malicious and false public statements about Manax's ability to practice medicine. McNamara's purpose was to damage Manax's professional reputation, and to have him removed from the staff of a hospital. McNamara also "coordinated" the publication of false and misleading articles in defendant Cox Enterprises' *Austin American–Statesman* and *Waco Tribune–Herald,* and in defendant Cechoslovak Publishing's *The West News.* Defendants Denise Gamino, a reporter employed by Cox, and Sue Pescaia, the owner of *The West News,* acted "in concert" with McNamara in publishing the false stories.

Second, Manax alleges that McNamara solicited and encouraged some of Manax's former patients to file frivolous malpractice suits against him. McNamara referred these patients to attorneys Squires and Williams, also defendants in the present case. Manax says that Squires and Williams unethically settled these cases in a "package deal" without the clients' consent. He says Squires and Williams also violated legal ethics by disclosing information about their clients to defendant Gamino for publication in the newspaper. In addition, he says that Williams sent him a $500,000 settlement demand in one case three days after publicly threatening to "expose" Manax's record to the Board of Medical Examiners.

Finally, Manax makes several less detailed allegations. He says McNamara encouraged and directed others to file unsubstantiated complaints against Manax with the state Board of Medical Examiners. Also, he says McNamara tried to persuade state senator Chet Edwards to conduct hearings on the board's investigation of Manax, in an effort to have it revoke Manax's license. Last, he says that he received several telephoned extortion threats against his and his family's lives.

In the district court, Manax asserted federal claims based on RICO and 42 U.S.C. §§ 1983, 1985(2)–(3), and 1986. He also asserted state tort and contract law claims pendent to the federal claims. The district court dismissed all of Manax's claims. On appeal, Manax contests only the dismissal of his RICO and 42 U.S.C. § 1983 claims.[1]

---

1. Manax does ask for reinstatement of his pendent state law claims, but only in the event that

we reverse the district court and hold that he possesses a viable federal claim.

## II.

### A. The RICO Claims

A RICO claim, 18 U.S.C. § 1962(c), "requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985) (footnote omitted). We think Manax's complaint failed to allege the existence of an enterprise.

An enterprise under RICO can include the usual legal entities such as partnerships and corporations, but it also can include "any union or group of individuals *associated in fact* although not a legal entity...." 18 U.S.C. § 1961(4) (emphasis added). To establish an association-in-fact enterprise, a plaintiff must "show 'evidence of an ongoing organization, formal or informal, and ... evidence that the various associates function as a continuing unit.'" *Atkinson v. Anadarko Bank and Trust Co.*, 808 F.2d 438, 440 (5th Cir.1987) (quoting *United States v. Turkette*, 452 U.S. 576, 101 S.Ct. 2524, 2528, 69 L.Ed.2d 246 (1981)). An enterprise must be "an entity separate and apart from the pattern of activity in which it engages." Id. at 441 (quoting *Turkette*, 101 S.Ct. at 2529). It must have an ongoing organization, and its members must function as a continuing unit, as shown by a decision making structure. *Shaffer v. Williams*, 794 F.2d 1030, 1032 (5th Cir.1986).

A plaintiff asserting a civil RICO claim must allege the existence of such an enterprise. *Montesano v. Seafirst Commercial Corp.*, 818 F.2d 423, 427 (5th Cir.1987). It is important to note at the outset that, whatever the pleading requirement for other causes of action, plaintiffs in RICO claims "must plead specific facts, not mere conclusory allegations, which establish the enterprise." *Id.*

In the present case, Manax does allege the existence of an association between the defendants. He says, for example, that defendant McNamara is the "kingpin," and that as such she directed and coordinated with the other defendants the publication of false articles in the press and the filing of frivolous malpractice cases. This association, however, lacks the continuity required of RICO enterprises. The association as alleged has one short-term goal—the destruction of Manax's medical practice—and presumably will disband upon the attainment of that goal. There is, as a result, nothing linking the members of the association to one another except the commission of the predicate criminal acts.

The allegations in the present case are significantly like those in our earlier decision in *Montesano*. The plaintiff there brought a RICO claim against defendants who allegedly had formed an organization with the purpose of illegally repossessing the plaintiff's boat. (Some of the defendants had a security interest in the boat.) The plaintiff alleged that, during the course of the illegal scheme, the defendants had committed several predicate acts of wire fraud and, thus, were liable under RICO. We affirmed the district court's dismissal of the complaint, holding that "two individuals who join together for the commission of one discrete criminal offense have not created an 'association-in-fact' enterprise, even if they commit two predicate acts during the commission of this offense, because their relationship to one another has no continuity." *Montesano*, 818 F.2d at 427.

The Second Circuit reached a like result in *Beck v. Manufacturers Hanover Trust Co.*, 820 F.2d 46 (2d Cir.1987). In that case, the plaintiff had alleged a RICO violation because of the defendants' alleged participation in a scheme to defraud bondholders by selling collateral at a reduced price. The district court dismissed the complaint and the court of appeals affirmed. The court first noted that, in the Second Circuit, a RICO enterprise required "evidence of an *ongoing organization*, formal or informal, and ... evidence that the various associates function as a *continuing unit*." *Id.* at 51 (quoting *United States v. Ianniello*, 808 F.2d 184, 191 (2d Cir.1986)) (emphasis in original). The enterprise alleged by the plaintiff, however, "had but one straightforward, short-lived goal—the sale of the U.S. collateral at a reduced price. At the conclusion of the sale, the alleged enter-

prise ceased functioning. Such an association is not sufficiently continuing to constitute an 'enterprise' under [RICO]" *Id.* (citation omitted).

We think that our previous decision in *Montesano* and the Second Circuit's persuasive reasoning in *Beck* control the result in this case. The association alleged by Manax had as its purpose a single, relatively short-lived goal: accomplishing the destruction of Manax's medical practice. The association was ad hoc; *i.e.*, it was formed for the immediate accomplishment of one specific end. It therefore lacked the continuity required to bring it within RICO's ambit. The district court, as a result, correctly dismissed Manax's RICO claim.

■ Manax also asserted a claim based on 18 U.S.C. § 1962(d), which prohibits conspiracies to violate RICO. A RICO conspiracy, of course, requires the existence of a RICO enterprise. *United States v. Neapolitan*, 791 F.2d 489, 499 (7th Cir.1986). Because Manax's allegations are insufficient to establish an enterprise, the district court also correctly dismissed Manax's RICO conspiracy claim.

## B. The Civil Rights Claim

A claim for relief under 42 U.S.C. § 1983 must contain at least two elements. Plaintiffs "are first bound to show that they have been deprived of a right 'secured by the Constitution and the laws' of the United States. They must secondly show that [the defendant] deprived them of this right acting 'under color of any statute' of the [state]." *Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149, 98 S.Ct. 1729, 1733, 56 L.Ed. 2d 185 (1978). We think that Manax's allegations in this case fail to establish that the defendants acted under color of state law. We acknowledge that we may affirm the district court's dismissal only if Manax is not entitled to relief under any set of facts that could be proved in support of his claim. *United States v. Uvalde Consolidated Independent School District*, 625 F.2d 547, 549 (5th Cir.1980). We hold, however, that Manax's allegations of state ac-

tion in this case fail even to meet that relaxed standard.

■ Manax alleges only two instances of claimed state involvement in the scheme to damage his ability to practice medicine. First, he alleges that defendant McNamara, as mayor of Waco, employed the power of her office against him. Second, he alleges that the defendants' scheme included an attempt, in part through the office of a state senator, to cause the state Board of Medical Examiners to revoke his license to practice medicine.

Manax's first allegation has little merit. Manax does assert cursorily that McNamara used the power of her official position in carrying out the defendants' scheme. We have held, however, that "[i]n reviewing a Rule 12(b) dismissal, we do not take account of allegations that are wholly conclusory and that do not set forth facts that, if proved, would warrant the relief sought." *Thibodeaux v. Bordelon*, 740 F.2d 329, 332 n. 2 (5th Cir.1984) (emphasis in original). It is clear in this case that Manax's allegations about McNamara's actions concern exclusively acts done in her private capacity as citizen. Manax failed to allege any incident in which McNamara employed the slightest shred of the power of the mayor's office. None of McNamara's claimed actions in support of the defendants' scheme—making false statements about Manax, coordinating false newspaper articles, and referring frivolous cases to other lawyers—has anything to do with the power of the mayor's office; all of these actions may be accomplished by ordinary citizens who lack an official position. Private acts, however, are "not considered to be done 'under color of' state law merely because the actor is a public official." *Smith v. Winter*, 782 F.2d 508, 512 (5th Cir.1986) (holding that a county superintendent did not act under color of state law when he initiated a recall petition, because Mississippi law gave that right to all citizens); *see also Polk County v. Dodson*, 454 U.S. 312, 102 S.Ct. 445, 450–53, 70 L.Ed.2d 509 (1981) (holding that a public defender and employee of the state did not act under color of state law merely by

withdrawing from a frivolous representation, because all attorneys have that right).

■ Manax also has alleged that the defendants engaged in a campaign to force the state Board of Medical Examiners to withdraw Manax's license. In particular, he says, the defendants filed unsubstantiated complaints with the board, filed frivolous malpractice suits that triggered board investigation of him, and coordinated false newspaper articles and employed the office of state senator Edwards to create pressure for board action. We think, however, that this kind of relationship between the board, a state senator, and the defendants is too remote to place the imprimatur of the state on the defendants' conduct.

The Supreme Court has written that "a State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State."[2] *Blum v. Yaretsky,* 457 U.S. 991, 102 S.Ct. 2777, 2786, 73 L.Ed.2d 534 (1982). In particular, "[m]ere approval of or acquiescence in the initiatives of a private party is not sufficient to justify holding the State responsible for those initiatives under the terms of the Fourteenth Amendment." *Id.* In the present case, Manax does not allege that the state, either overtly or covertly, encouraged or directed the defendants' activities. Indeed, Manax notes that the board's several investigations have never resulted in any disciplinary action against him. According to Manax's complaint, the defendants merely provided information to the board and to a state senator's office, and then pressed for action.

Providing information to the state and pressing for state action against an individual, without more, cannot suffice to make a private entity liable under section 1983 as a state actor. Thus, in *Hernandez v. Schwegmann Brothers Giant Supermarkets, Inc.,* 673 F.2d 771 (5th Cir.1982) (per curiam), we affirmed the grant of a directed verdict on state action grounds against a plaintiff who proved merely that the police relied on information supplied by a grocery store in arresting and prosecuting her for shoplifting. Similarly, in *Arnold v. International Business Machines Corp.,* 637 F.2d 1350 (9th Cir.1981), the court affirmed a summary judgment on state action grounds against a plaintiff who proved only that the defendants sought out and participated in a police investigation of theft of a corporation's trade secrets.

Barring a constitutional defect in the state's procedure for responding to requests or information from private entities, the state is not the source of the wrongdoing when private entities seek to misinform or mislead the state into employing its power improperly. The wrongdoing instead lies with the private entities, and injured persons must use the ordinary means for rectifying such private wrongs: state tort and contract law.

This case concerns only private initiatives directed at obtaining government action against Manax. Even if we assume that the board, by commencing investigation of Manax, "acquiesced" in those initiatives, its actions do not change those private initiatives into government action.

### III.

■ Manax also complains that the district court erred in dismissing his complaint without allowing him the opportunity to amend his pleadings. We reject this contention. Whether to allow an amendment is within the discretion of the trial court, and we may review an exercise of that discretion only for abuse. *Pan–Islamic*

---

**2.** The Court in *Blum* also held that state action may be found when a private entity is so closely regulated by the state "that the action of the [entity] may be fairly treated as that of the State itself," 102 S.Ct. at 2786 (quoting *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974)), or when a private entity "has exercised powers that are 'traditionally the exclusive prerogative of the State,'" *id.* (quoting 95 S.Ct. at 454). Manax does not argue that either of those circumstances is present here.

*Trade Corp. v. Exxon Corp.,* 632 F.2d 539, 546 (5th Cir.1980). In this case, Manax never moved to amend his complaint after the court dismissed it.[3] The district court, as a result, hardly abused its discretion by failing to allow an amendment on its own motion. *See Coates v. Illinois State Board of Education,* 559 F.2d 445, 451 (7th Cir.1977).

## IV.

█ Finally, we must address two motions filed by the parties in this court. Manax moved for an award of attorney's fees and costs "in connection with this appeal." Defendants Cox Enterprises and Denise Gamino, arguing that Manax's motion was frivolous, moved for an award of attorney's fees incurred in responding to that motion.

The only basis for Manax's motion is his assertion that the "dismissal of the federal claims was inappropriate and not due to Appellants' lack of proper pleading. Unless Appellant [sic] is awarded attorney's fees and costs, they will suffer a financial hardship." Manax cited no authority for the proposition that district court error and financial hardship justify the award of attorney's fees and costs, and we can find none. The usual American rule, of course, is that "attorney's fees are not ordinarily recoverable in the absence of a statute or enforceable contract providing therefor." *Fleischmann Distilling Corp. v. Maier Brewing Co.,* 386 U.S. 714, 87 S.Ct. 1404, 1407, 18 L.Ed.2d 475 (1967). Manax's motion, as a result, is DENIED.

█ Cox Enterprises' and Gamino's motion asks for the attorney's fees incurred in responding to Manax's motion, and asks that the amount be assessed personally against Manax's attorney, Peter Fulton. The basis for the motion is 28 U.S.C. § 1927, which provides that an attorney "who so multipiies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

We agree that the motion for attorney's fees filed by Fulton on behalf of Manax was, if not frivolous, at least notable for its lack of merit. However, we are not persuaded that the motion exhibited the degree of recklessness, bad faith, or improper motive required for a finding that the attorney has multiplied the proceedings "unreasonably and vexatiously." *Cf. McGoldrick Oil Co. v. Campbell, Athey & Zukowski,* 793 F.2d 649, 653–54 (5th Cir.1986) (imposing sanctions under section 1927 when circumstances indicated that the entire appeal was an attempt to harass the defendant law firm); *Estate of Blas v. Winkler,* 792 F.2d 858, 860 (11th Cir.1986) (holding that section 1927 sanctions are justified "only on a showing of the attorney's recklessness or bad faith"). Therefore, defendants' motion for attorney's fees is also DENIED.

## V.

The district court correctly concluded that Manax's complaint was insufficient to state a claim under either RICO or 42 U.S.C. § 1983. Its dismissal of the case is therefore

AFFIRMED.

---

**3.** In response to an earlier motion by defendants for a more definite statement, Manax did seek leave to amend in the event that motion was granted. The district court, however, denied the motion for a more definite statement.