MARRIOTT BROTHERS, et al., Plaintiffs,

v.

Coke L. GAGE, et al., Defendants.

Civ. A. No. CA 3–86–0335–G.

United States District Court,
N.D. Texas,
Dallas Division.

Oct. 7, 1988.

Emil Lippe, Jr., Lippe and Associates, William O. Holston, Jr., G. Dennis Sullivan, Sullivan, Ave & Associates, Dallas, Tex., for plaintiff.

Dean Carlton, The Carlton Firm, George H. Kolb, Gardere & Wynne, Dallas, Tex., and Frank Lay, Borger, Tex., for defendants.

## MEMORANDUM ORDER

FISH, District Judge.

This case is before the court on the amended motion for summary judgment of defendants Collins, Harnage, and Mega Resources ("the Collins defendants").[1] By order of May 13, 1988, the court stayed its consideration of the motion for summary judgment until the plaintiffs had filed a RICO case statement. After considering the motion and response, and the RICO statement and responses, the court concludes that plaintiffs have no meritorious RICO claim against the defendants. Accordingly, defendants are entitled to judgment on this claim as a matter of law. Because no other federal claim is asserted, the court declines to exercise pendent jurisdiction over the state law claims, and dismisses them without prejudice.

### I. *Background*

In January 1985, plaintiff-intervenor Harold D. Boswell ("Boswell") contracted with Bennett–Carder & Associates, Inc. ("Bennett–Carder") to buy the Yates Ranch. Plaintiff-intervenor Kirby Edwards ("Edwards"), a real estate broker, then told Boswell that the plaintiffs, J.R. Marriott and the Marriott Brothers ("the Marriotts"), were interested in purchasing the ranch to mine its limestone. In April 1985, J.R. Marriott obtained an option to receive an assignment of Boswell's rights as purchaser.

In late April, Bob Strong, a friend of Edwards, suggested that Edwards contact Coke Gage ("Gage") to assist in obtaining financing for the Marriotts' purchase. At meetings to discuss financing from Banc-Texas Dallas, N.A. ("BancTexas"), Gage was told of the Marriotts' desire to mine the limestone. On April 24, 1985, the Marriotts received a final extension of the Boswell contract through May 10, 1985. Gage

---

1. Defendant Coke Gage has also moved to dismiss and has adopted by reference the response of the Collins defendants to plaintiffs' RICO case statement. *See* Response to RICO Statement of Coke L. Gage at 2.

allegedly negotiated separate agreements ("the loan point agreements") with Boswell and Edwards for each to pay him two percentage points of the loan. Gage allegedly said that he would share the Boswell points with defendant Edward Nash ("Nash"), and the Edwards points with Strong.

The Marriott purchase fell through when the plaintiffs were unable to secure financing without a property appraisal. On May 16, 1985, Gage and defendant Collins' father visited the ranch to consider purchasing it. On May 18 or 19, Steven Collins visited the ranch. On May 21, an earnest money purchase contract was signed, with Steven Collins, trustee, as purchaser. At the closing on June 5, 1985, title was taken in the name of Norman Harnage, trustee.[2] Harnage later conveyed one-half of the minerals to Dimitria Dennis, a friend of Gage.

In February 1986, the plaintiffs brought this suit, alleging state law claims for common law fraud, breach of contract, tortious interference, breach of fiduciary duty, and a federal claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.* Boswell and Edwards later intervened, alleging claims based on breach of contract. The Collins defendants have counterclaimed, seeking a removal of a *lis pendens* notice on the Yates ranch and a declaration that the plaintiffs have no right to the ranch. Bennett–Carder has counterclaimed for barratry based on the plaintiffs' state law claims.

## II. Analysis of the RICO Claim

### A. Pattern of Racketeering Activity

■ 18 U.S.C. § 1962 requires a "pattern of racketeering activity." The plaintiffs

allege that, as part of the enterprise and pattern of racketeering activity, Gage helped various persons not connected with the Marriott–Yates transaction to obtain BancTexas loans in exchange for ownership interests in, and/or shares of the profits of, their operations.[3]

Several of these operations were Texas stores and salvage businesses; others were oil and gas operations, and one was a GM dealership. RICO Statement (hereafter "RS") at 65–66. The plaintiffs have advanced two different ways in which these non-Marriott loans were transacted. RS at 44–45; Brief of Plaintiffs in Response to Amended Motion for Summary Judgment at 19–20. In the first, Gage obtained loans from BancTexas, which he then relent to the owners of the operations. These end-borrowers repaid the loans with postdated checks turned over to BancTexas. In return, Gage allegedly received part of the profits from, and ownership of, their operations. RS at 44–45, 65–66. In the second, the end-borrowers, with Gage's help, obtained loans directly from the bank. In exchange, he received benefits as described above. RS at 44–45.[4]

Under the law of this circuit, the non-Marriott loan transactions are not a "pattern of racketeering activity." A pattern of racketeering activity requires "continuity and relationship." *Delta Truck & Tractor v. J.I. Case Co.*, 855 F.2d 241, 242 (5th Cir.1988). *See also Sedima, S.P.R.L. v. Imrex Company, Inc.*, 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985);[5] *cf. R.A.G.S. Couture, Inc. v.*

---

**2.** The parties disagree whether this trust was the Collins Children's Trust or a trust for Steve Collins, John Collins, and Coke Gage. This dispute need not be resolved to decide this motion.

**3.** Defendants maintain that, in several instances, Gage received no such benefits. The court does not decide this issue, but will assume, for purposes of this motion, that Gage did receive such benefits.

**4.** The plaintiffs also claim that "Gage Resources" borrowed money from BancTexas and re-lent it to third parties for oil and gas activities. These loans were paid directly back to the

bank, with Gage receiving benefits from the borrowers. RS at 65–66. The Wood loan entailed Gage's helping Wood obtain a direct BancTexas loan to acquire a GM dealership. In return, Wood leased the dealership buildings from him. The plaintiffs also allege that Wood paid Gage a share of the revenues, although Gage and Wood deny this. RS at 49–50.

**5.** *Sedima* raised two different "pattern" issues. One is whether two acts which are part of a single criminal scheme can be a "pattern." The Fifth Circuit remains virtually alone among the circuits in holding that they can. *Montesano v.*

*Hyatt,* 774 F.2d 1350, 1355 (5th Cir.1985).[6]

Here, not only is there no pattern among the non-Marriott loans; there is also no pattern between the non-Marriott loans, on the one hand, and the Marriott–Yates transaction, on the other. The Marriott loan was from the bank, not Gage. Gage was not to receive an ownership interest or share of the profits, but loan points resembling the commission that would be charged by a loan broker. The non-Marriott loans financed stores, salvage operations, oil and gas development and a GM dealership, not the acquisition of a ranch. The loans were made to various people, none of whom is connected to the Marriott transaction. Given the lack of continuity and relationship connecting them with the Yates transaction, it is legally insignificant for purposes of this case whether these non-Marriott loans, each alleged to be a discrete act of racketeering activity in itself, did or did not coalesce into "a pattern." Nevertheless, for the reasons explained more fully below, they also fail as individual acts of racketeering activity.

### B. Acts of Racketeering Activity [7] ("Predicate Acts")

1. 18 U.S.C. § 215 [8]
 (Bribery in Relation to a National Bank)

■ The plaintiffs allege that Gage violated § 215 by receiving payments for helping the non-Marriott borrowers obtain loans. RS at 44–45. § 215(a)(1) is inapplicable, because it applies by its terms only to those who make or offer the payment, i.e., the endborrowers. § 215(a)(2) is also inapplicable because Gage did not hold one of the requisite bank positions vis-a-vis the bank.[9]

Hence, the only possible § 215 violation, on the facts alleged here, is that Gage solicited a bribe for Nash when he allegedly told Boswell that he would share the two loan percentage points with Nash.[10] The plaintiffs claim that a jury could infer that Nash consented to the payment because Gage and Nash had previously worked together. RS 30–31. Working together does not in any way imply, however, that the two men had agreed to break the law. Moreover, it is difficult to see any difference between Gage's actions and those of an ordinary loan broker who ar-

---

*Seafirst Commercial Corp.,* 818 F.2d 423, 425–26 (5th Cir.1987) (criticizing *R.A.G.S. Couture, Inc. v. Hyatt,* 774 F.2d 1350, 1355 (5th Cir.1985), which established this rule). The other is whether two non-continuous and unrelated acts can, without more, be a "pattern." Only the latter issue is raised in this case.

6. *R.A.G.S.* held that two related acts of mail fraud could constitute a "pattern." *Id.* at 1355. The first act was the mailing of copies of fraudulent invoices for sewing machine repairs and rental fees that one defendant caused to be sent to the plaintiff. The second act was the mailing from counsel for one of the defendants to plaintiff's counsel, which included copies of the invoices and a demand for payment. *Id.* at 1352.

7. This section includes a discussion of predicate acts allegedly committed in connection with the non-Marriott loans. Thus, even if the non-Marriott loans were considered part of "a pattern" which included the Marriott loan, the absence of predicate acts would still defeat the plaintiffs' RICO claim.

8. While the violation of § 215 is not a predicate act, it is unlawful under 18 U.S.C. § 1952, the violation of which is a RICO predicate act. § 215(a)(1) makes it an offense for one to corruptly offer or promise anything of value to

"any person" with the intent of influencing a bank officer, director, employee, agent, or attorney in connection with bank business or transactions. § 215(a)(2) penalizes bank officers, directors, employees, agents, and attorneys who solicit or agree to accept anything of value for the same purpose.

9. Until its amendment in October 1984, the activities presently described in § 215(a)(2) were the only conduct proscribed by § 215. Thus, for most of the time period spanned by the non-Marriott loans, a necessary element of a § 215 offense was lacking, viz., that Gage had one of the positions with the bank described in the statute.

It appears that the only such position Gage could have had was that of "agent." Yet the plaintiffs do not allege that he had such a position and no evidence supports that theory. Indeed, the plaintiffs seem to negate such a possibility by arguing that Gage controlled the enterprise. RS at 65. That control, if it existed, would suggest that Gage was a principal, not an agent.

10. The other loan point agreement, between Gage and Strong, did not involve any person having a position with the bank as required for a violation of § 215.

ranges loans for a commission. *See, e.g., Stuckey v. Union Mortgage & Investment Company,* 383 S.W.2d 429 (Tex.Civ.App.— Tyler 1964, writ ref'd n.r.e.) (oral agreement for loan broker to receive a percentage of loan as commission). 18 U.S.C. § 215 is not intended to prohibit the activities of ordinary loan brokers. *See* 18 U.S. C. § 215(c).

Finally, nothing in the RICO statement implicates the Collins defendants in the loan transactions. In contrast to the plaintiffs' conclusory allegations, the Collins defendants state in affidavits that they had no dealings or involvement with BancTexas or the loan transactions. Supplemental Affidavit of Steven Collins ¶ 5; Affidavit of Norman G. Harnage ¶ 4. When affidavits challenge unsupported allegations, summary judgment is merited. *In re Lewisville Properties, Inc.,* 849 F.2d 946, 950–51 (5th Cir.1988). *See also Celotex Corporation v. Catrett,* 477 U.S. 317, 324–25, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986) (movant discharges summary judgment burden by pointing out absence of evidence supporting non-movant's allegation).

Nor does a § 1962(c) claim lie against the Collins defendants for this alleged bribe, because they lack the enterprise association required by § 1962(c). Such an association requires that the defendant "know *something* about [their] co-defendants' related activities which make up the enterprise" (emphasis in original). *United States v. Martino,* 648 F.2d 367, 394 (5th Cir.), *vacated in part on other grounds,* 650 F.2d 651 (5th Cir.1981), *cert. denied,* 456 U.S. 949, 102 S.Ct. 2020, 72 L.Ed.2d 474 (1982). As indicated above, the Collins defendants knew nothing of Gage's dealings regarding the Marriott loan.

## 2. Texas Penal Code § 36.05
### (Witness Tampering)

■ Bribery chargeable under state law and punishable by at least a year in prison is a predicate act under 18 U.S.C. § 1961(1)(A), and an unlawful activity for Travel Act purposes. § 36.05 makes it an offense to offer a benefit to a witness with the intent to influence that witness.

The plaintiffs allege that Joe Evans was paid $10,000, not as a brokerage fee, but so that he would not reveal, to the Marriotts or a jury, that Gage had met with Bennett–Carder before the Marriotts' option had allegedly expired. RS at 16–18, 53. This allegation will not, however, support a claim under § 36.05. It is based on Loren Wilson's deposition testimony that Evans told him that Gage had contacted Bennett–Carder before expiration of the option, and Evans' subsequent denial of having made that statement. RS at 16. The Wilson statement is hearsay and therefore inadmissible. *See* Fed.R.Evid. 802; F.R.Civ.P. 56(e) (affidavits on summary judgment motion shall set forth such facts as would be admissible in evidence); *Vidrine v. Enger,* 752 F.2d 107, 110 (5th Cir.1984).

## 3. Texas Penal Code § 32.43
### (Commercial Bribery)

This statute makes it an offense for a fiduciary to solicit or accept a benefit from a person other than his beneficiary with the agreement that the benefit will influence his conduct of the beneficiary's affairs. The statute also penalizes anyone who offers such a benefit. § 32.43(b) & (c). The plaintiffs allege that Gage violated § 32.43 with regard to both the non-Marriott loans and the Marriott loan.

### (A). *The Non–Marriott Loans*

■ The plaintiffs allege that Gage violated § 32.43 by accepting payments when he arranged the non-Marriott loans.[11] On this record, however, the elements of a § 32.43 violation have not been shown. The statute requires a beneficiary, i.e., "a person for whom a fiduciary is acting," § 32.43(a)(1), but plaintiffs have not alleged the existence of one. Only BancTexas could arguably be the beneficiary. The borrowers cannot be beneficiaries, because they allegedly paid or offered benefits to

---

11. The plaintiffs do not allege that the Collins defendants, the bank defendants, or Nash com- mitted these offenses.

Gage as fiduciary. Unless Gage is the bank's fiduciary, therefore, the statute does not apply. The statute specifies four categories of persons deemed to be fiduciaries for its purposes, § 32.43(a)(2)(A)–(D), but Gage's relationship to the bank is not among them.

### (B). *The Marriott Transactions*

■ The plaintiffs claim that Gage breached his fiduciary duty to the Marriotts, in violation of § 32.43, by "filching" their rights to the Yates ranch for his own use and that of his "co-conspirators," the Collins defendants. RS at 51–52, 63. The plaintiffs identify only two potential § 32.43 violations: first, the loan point agreement between Gage and Boswell and second, the loan point agreement between Gage and Edwards.

Nevertheless, as a matter of law, there can be no violation of § 32.43. Even if Gage were a fiduciary for the Marriotts under general principles of law, he must still fall within one of the four categories of persons defined as a fiduciary in § 32.43. He is not alleged, however, to have occupied any of these positions.

Alternatively, even under broader principles of general Texas law, Gage could not have been a fiduciary for the Marriotts. For a fiduciary relationship to exist, "the facts must show an extended period of dealing by parties who have worked together for a common goal, such as joint adventurers, partners, and attorney and client." *Gearhart Industries, Inc. v. Smith International, Inc.*, 592 F.Supp. 203, 223 (N.D. Tex.), *aff'd in part, modif'd in part, vacated in part (all on other grounds)*, 741 F.2d 707 (5th Cir.1984).

Under this test, the relationship between the Marriotts and Gage was too short for Gage to have become a fiduciary: it lasted at most 2–3 weeks, beginning in late April, 1985 (when Strong suggested that Edwards contact Gage) and ending on May 10, 1985 (when the Marriotts learned that Bennett–Carder would not renew their option). RS at 11, 15. Nor is it clear that the parties were working toward a common goal: the Marriotts were seeking to acquire the Yates ranch, while Gage's role was only to arrange financing, possibly in exchange for loan points from Boswell and Edwards.

The Marriotts' subjective trust of Gage cannot convert what would otherwise be arms-length dealing into a fiduciary relationship. *Rutherford v. Exxon Company, U.S.A.*, 855 F.2d 1141, 1145–46 (5th Cir. 1988); *Gearhart Industries*, above, 592 F.Supp. at 223; *Thigpen v. Locke*, 363 S.W. 2d 247, 253 (Tex.1963). Nor does the fact that the Marriott–Gage relationship was apparently characterized by the ordinary trust and cordiality of businesspeople create a fiduciary relationship. *Thigpen*, above, 363 S.W.2d at 253. Indeed, the plaintiffs negate the existence of any fiduciary duty on the part of Gage by claiming that, in their view, Gage was acting *on behalf of the bank* when he was told the information about the Marriott's business and plans. RS at 11.

Furthermore, § 32.43(b) requires that Gage be influenced, in his conduct of the Marriott's affairs, by the benefit offered to or received by him. There is no allegation, however, that Gage was conducting the Marriott's affairs, only that he was helping them obtain financing.

■ Assuming *arguendo* that the loan percentage point transactions violate § 32.43, there has been no Travel Act violation. The plaintiffs allege that Gage violated either 18 U.S.C. § 1952(a)(1), which prohibits use of a facility in interstate commerce, including the mails, to distribute the proceeds of an unlawful activity, or 18 U.S. C. § 1952(a)(3), which prohibits use of such a facility to promote an unlawful activity. The former does not apply because Gage never received any loan points; thus, no proceeds existed for him to distribute in interstate commerce. The latter cannot apply because, although the plaintiffs claim that the mails were used to facilitate the entire scheme, they do not allege use of the mails in relation to the loan point agreements, those agreements being exclusively oral.

### 4. Texas Penal Code § 32.45 (Misapplication of Fiduciary Property)

■ The plaintiffs claim that Gage's breach of his fiduciary duty to the Mar-

riotts violated Tex.Pen. Code § 32.45, which criminalizes certain misapplications of fiduciary property. A violation of § 32.45 is not, however, a predicate act under RICO. 18 U.S.C. § 1961(1)(A). Nor is it an unlawful act as defined in 18 U.S.C. § 1952, the violation of which would be a predicate act. 18 U.S.C. § 1961(1)(B). Violation of this statute, therefore, is not a ground for liability under RICO.

### 5. 18 U.S.C. § 1341
### (Mail Fraud)

#### (A). *The Standard*

■ The mail fraud statute requires that (1) the defendant participate in a scheme or artifice to defraud, (2) the mails be used to execute the scheme, and (3) the use of the mails was "caused by" the defendant or someone else associated with the scheme. *United States v. Davis*, 752 F.2d 963, 970 (5th Cir.1985). The statute does not, however, reach every business practice that fails to fulfill expectations or every breach of contract, *United States v. Kreimer*, 609 F.2d 126, 128 (5th Cir.1980), or every breach of fiduciary duty, *United States v. Goss*, 650 F.2d 1336, 1346 (5th Cir.1981). Rather, there must have been "a recognizable scheme formed with specific intent to defraud." *Goss*, above, 650 F.2d at 1346. In addition, the defendants must have made fraudulent representations or omissions reasonably calculated to deceive. *United States v. Finney*, 714 F.2d 420, 423 (5th Cir.1983).

#### (B). *Fiduciary Duty Mail Fraud Claim*

■ The plaintiffs allege that the fraud occurred when Gage, as the Marriotts' fiduciary, "filched" their property (confidential information about their ranch plans) and misappropriated it for his use and that of the Collins defendants. They further claim that these actions, aided and abetted by Steven Collins, or pursuant to a conspiracy with him, constituted mail and wire fraud when coupled with use of the mail and wires. RS at 52.

This theory must fail because it is based on the faulty premise that Gage was the Marriotts' fiduciary. *See* above at 10–12. Even if he were, the mail fraud claim lacks merit for the reasons stated below.

#### 1. The Alleged Fraud

Mail fraud requires more than the plaintiffs' allegation that the defendants seized property rights for personal gain. RS at 56. Rather, the plaintiffs must demonstrate the existence of an "actual identifiable sceme to *defraud*" (emphasis added). *Manax v. McNamara*, 660 F.Supp. 657, 661 (W.D.Tex.1987), *aff'd*, 842 F.2d 808 (5th Cir.1988).

The plaintiffs claim that the fraud began when Gage acquired confidential information about their business and ranch plans, RS at 57, at a meeting in late April 1985. RS at 11. The next step in the scheme, according to them, was a meeting at Nash's office, RS at 57, where Gage allegedly instructed Nash to make the loan and Nash allegedly agreed to do so. RS at 12.[12] Finally, the plaintiffs allege Gage told the Marriotts, at a bar following the Nash meeting, that they had their loan. RS at 13, 57. After Gage made this statement, J.R. Marriott calculated the profits to be made from the mine. In response to this, Gage suggested that he buy the ranch and lease it to the Marriotts. RS at 13.[13]

#### 2. Rule 9(b), F.R.Civ.P.

According to the plaintiffs, Gage did not become interested in buying the ranch until *after* Marriott disclosed its profit potential. This disclosure, in turn, did not occur until *after* Gage made the statements about the Marriotts' loan. Because Gage's statements *preceded* inception of the alleged scheme to deprive plaintiffs of their rights

---

**12.** Nash's alleged agreement is obviously not a fraudulent statement by Gage. Moreover, Nash is not among those alleged to have committed fraud. RS at 52, 57.

**13.** Possibly, there is one more fraudulent statement. Gage is alleged to have stated that, as long as he was satisfied with the limestone reserves, the loan could be obtained without a property appraisal. RS at 13. A month later, the Marriott's comptroller, Wayne Roberts, learned that the bank would require an appraisal. RS at 15.

in the Yates ranch, the element of scienter is missing.

The failure to allege scienter, while simultaneously alleging facts negating such a mental state, demonstrates that the plaintiffs have not adequately pled intent under Fed.R.Civ.P. 9(b). Although intent can be averred generally under Rule 9(b), a RICO mail fraud averment must nonetheless provide some "factual basis for conclusory allegations of intent," which must, in turn, give rise to a "strong inference" of fraudulent intent. *Beck v. Manufacturers Hanover Trust Company*, 820 F.2d 46, 50 (2d Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988), *cited with approval* in *Manax v. McNamara*, 842 F.2d 808, 811 (5th Cir.1988). Here, both the complaint and RICO statement fail in that regard.

Rule 9(b) also requires that the plaintiffs plead with particularity the representations made by each defendant. *Unimobil 84, Inc. v. Spurney*, 797 F.2d 214, 217 (5th Cir.1986). Not only is such particularity absent from the pleadings, it is missing from the RICO statement, even though the court specifically asked for it. RS at 55. Instead, the plaintiffs rely vaguely on certain "statements" which are not further identified or described. RS at 56–57.[14]

### 3. Use of the Mails

It also appears that the mails were not used for the purpose of executing the scheme, as required by 18 U.S.C. § 1341. The plaintiffs claim that there were two sets of mailings that were part of the fraud. The first led up to the closing on the Yates purchase. RS at 58. These mailings, however, were not "part of the execution of the fraud," *Finney*, above, 714 F.2d at 423 (quoting *Kann v. United States*, 323 U.S. 88, 95, 65 S.Ct. 148, 151, 89 L.Ed. 88 (1944)), or "incident to an essential part of the scheme," *id.* (quoting *Pereira v. United States*, 347 U.S. 1, 8, 74 S.Ct. 358, 362, 98 L.Ed. 435 (1954)), because the alleged fraud had already occurred before the mailings were made. This is also true of the second set, mailings used to convey mineral interests to Dimitria Dennis. RS at 58.

### 4. Defendants Other Than Gage

The allegedly fraudulent statements do not involve defendant Collins. Indeed, there is no mention of Collins in the section describing the fraud, except for a conclusory introductory statement that Collins either aided and abetted the fraud or conspired to commit it. RS at 52–58. By contrast, several facts concerning Gage's involvement are alleged. On this record, a finding that Collins committed mail fraud could be founded only on suspicion, nothing more.[15]

### (C). *The Evans Payment*

The plaintiffs allege that a payment to Evans by mail constituted mail fraud, as well as the promotion of an unlawful activity by mail under the Travel Act. RS at 53. These allegations are based on hearsay, as explained above at 9, and must therefore fail. In any event, the allegation would stand, at best, against Gage alone. The payment came from Bennett–Carder. Brief of Plaintiffs in Response to Amended Motion for Summary Judgment of Collins Defendants, etc., Exhibit E. Even assuming that Gage had directed Bennett–Carder to make the payment, there is still no connection between the payment and the Collins defendants or any indication that they

---

**14.** After a painstaking line-by-line review of the entire RICO statement, the court found only the following reference to representations allegedly made by the various defendants: "other persons to whom *statements* were made involving the fraudulent scheme, as alleged in greater detail above, included Boswell, Edwards and Strong." RS at 57 (emphasis added). The court could locate no such "statements." If "statements" mean the loan point agreements, these are not alleged to involve misrepresentations. In addition, since the loan point agreements involved the plaintiffs' application for financing, they are unrelated to the "filching," which is alleged to have occurred later, i.e., after Gage discovered the ranch's profit potential.

**15.** The plaintiffs do not allege that defendants Mega Resources, Harnage, Nash, BancTexas, or BancTexas Group committed mail fraud. Hence, mail fraud could serve as the basis of a RICO claim only against Gage.

had the requisite intent to defraud. The same is true of BancTexas Group, Inc., BancTexas, and Nash ("the bank defendants").

### 6. 18 U.S.C. § 1343 (Wire Fraud)

▉ The only use of wires alleged in this case is a wire transfer of funds for down payment on the Yates ranch. RS at 58. Wire fraud requires the use of interstate wires; intrastate wires will not suffice. *Smith v. Ayres*, 845 F.2d 1360, 1366 (5th Cir.1988). Although Fed.R.Civ.P. 9(b) requires that the plaintiffs state with particularity the circumstances constituting fraud, there is no allegation in the pleadings or RICO statement that interstate wires were used. Indeed, because all of the parties were Texans, the transactions all occurred in Texas, and the property involved is located in Texas, use of interstate wires appears highly improbable.

Furthermore, the only basis for the allegation of wire fraud is that Gage appropriated the Marriotts' property rights for his and the Collins defendants' use and that wires were used in connection with this misappropriation. Since this allegation was also the basis of the mail fraud fiduciary duty claim, the analysis of that claim applies here as well, *see* section II(B)(5) above, and serves as an independent basis for concluding that the plaintiffs cannot establish a RICO claim based on wire fraud.

### C. Unlawful Debt

▉ The plaintiffs allege that when Gage borrowed funds from BancTexas and re-lent them to the non-Marriott borrowers at a higher interest rate than he paid, he committed usury and therefore collected an unlawful debt in violation of 18 U.S.C.

§ 1962. They also allege that BancTexas participated in, and aided and abetted, the usury. RS at 46.

The alleged usury does not fall, however, within RICO's definition of unlawful debt. 18 U.S.C. § 1961(6) defines such a debt as one unenforceable because of usury laws and which was "incurred in connection with ... the business of lending money ... at a rate usurious under State or Federal law, where the usurious rate is at least twice the enforceable rate." The plaintiffs have not alleged, and the record does not provide even the barest support for, a claim that Gage was in the business of charging at least twice the enforceable rate or that he did so in connection with these transactions. They allege only that he committed usury.[16]

### D. Additional Grounds

Three additional grounds support the conclusion that, as a matter of law, plaintiffs have no RICO claim. First, RICO by its terms requires an enterprise, 18 U.S.C. §§ 1961(4), 1962, which has not been shown here. Second, RICO plaintiffs have standing to assert only those racketeering activities that have injured them in their business or property; no other predicate act can be the basis of an action brought under 18 U.S.C. § 1964(c). *Sedima*, above, 473 U.S. at 495–97, 105 S.Ct. at 3284–85.[17] Third, for reasons discussed below, several of plaintiffs' allegations fail to meet the standards of § 1962(a)-(d).

### 1. Absence of An Enterprise

The plaintiffs allege that the enterprise is an association in fact, composed of all or some of the following: Gage, Gage Resources, Inc., Gage Resources, Gage Re-

---

**16.** The plaintiffs do not claim that Nash or the Collins defendants were involved in the alleged usury. Furthermore, as indicated above, the Collins defendants lack the association with the enterprise that is required by § 1962(c). *See* section II(B)(1) above. Hence, they would not be liable under RICO even if Gage could be found to have collected an unlawful debt.

**17.** The injury can be caused by either the predicate acts or the activities described specifically in § 1962(a)-(d), so long as it is the plaintiffs

who are injured. *Id. See also Adams–Lundy v. Association of Professional Flight Attendants*, 844 F.2d 245, 250 (5th Cir.1988) (only those directly injured may bring a RICO action). Therefore, any allegations involving the non-Marriott loans cannot be the basis for the plaintiffs' action. Moreover, the Marriotts cannot maintain an action based on Gage's alleged loan point agreements with Boswell and Edwards. Those agreements did not injure the Marriotts.

sources, Ltd., Nash, BancTexas Group, BancTexas Dallas, Mega Resources, Inc., Harnage, Collins, Dimitria Dennis, Standard Wholesale Jewelry, Inc., Max Wider, the Clothes Closet, B. Bullock Fine Jewelers, Mrs. J.W. Christener, Raymond Rose, Rose Salvage, James Wood, Wood Motors, Inc., Clyde Brannan, Delzon "Possum" Elenburg, Elenburg Drilling Company, Inc. and an amorphous "others." [18] RS at 61–62.

■■■■■ On the record presented here, *no enterprise composed of any or all of these members has been shown.* A RICO enterprise must have a continuity of structure and purpose. Each member must share this purpose. *Shaffer v. Williams,* 794 F.2d 1030, 1032 (5th Cir.1986); *Manax v. McNamara,* above, 842 F.2d at 811. While membership may change over time, the enterprise must continue to have this same purpose, and the new member must perform the same roles as the old did. *See United States v. Bledsoe,* 674 F.2d 647, 665 (8th Cir.), *cert. denied,* 459 U.S. 1040, 103 S.Ct. 456, 74 L.Ed.2d 608 (1982). The members must function as a continuing unit. *Delta Truck,* above, 855 F.2d at 243; *Manax,* above, 842 F.2d at 811. Moreover, the enterprise must have an ascertainable structure distinct from the pattern of racketeering activity. *Delta Truck,* above, at 243; *Montesano v. Seafirst Commercial Corp.,* 818 F.2d 423, 427 (5th 1987); *United States v. Williams,* 809 F.2d 1072, 1094 (5th Cir.) *cert. denied,* —— U.S. ——, 108 S.Ct. 228, 98 L.Ed.2d 187 (1987); *Bledsoe,* above, 674 F.2d at 665. If nothing joins the association members except the commission of the predicate acts, there is no enterprise. *Manax,* above, 842 F.2d at 811. The enterprise must also have a decision-making structure, be it consensual or hierarchical, which directs the enterprises' affairs on an on-going, not *ad hoc* basis. *Delta Truck,* above, at 243; *Shaffer,* above, 794 F.2d at 1032; *United States v. Riccobene,* 709 F.2d 214, 221–22 (3d Cir.), *cert. denied,* 464 U.S. 849, 104 S.Ct. 157, 78 L.Ed.2d 145 (1983).

## (A). *No Continuous Purpose or Distinct Structure*

■■■■ In their opposition to defendants' motions for summary judgment, the plaintiffs have submitted no evidence raising a genuine issue of material fact as to whether an enterprise, continuous in purpose and distinct in structure, exists. The only link between the alleged transactions is Gage. There is no shared purpose between the Marriott and non-Marriott loans and the other transactions surrounding the Yates ranch. Allegedly, the non-Marriott loans involved Gage's obtaining a share of the profits or ownership interests from the end-borrowers. The Yates loan, by contrast, involved Gage's obtaining loan points from the real estate brokers, not the end-borrowers. Moreover, some of the non-Marriott loans involved the re-lending of money, a factor absent in the Marriott transaction. While Gage and BancTexas are involved in many of the transactions, they are linked only through the commission of predicate acts. There is no ascertainable structure distinct from the pattern of racketeering. The plaintiffs cannot create a structure through conclusory allegations that Gage controlled the enterprise. Nearly all of the alleged predicate acts entail some allegedly wrongful act by Gage, not by associates acting at his behest.

## (B). *No Continuity in Membership*

Continuity of membership in the enterprise is also lacking. Such continuity would require that the associates function as a continuing unit. *Delta Truck,* above, at 243; *Manax,* above, 842 F.2d at 811. Yet the plaintiffs have not alleged facts indicating a membership structure that permeates every predicate act and transaction. The non-Marriott loans involved Gage, loans from BancTexas, and someone else, usually an end-borrower with no link to Gage's other transactions (and certainly with no link to the Yates transactions). Moreover, the fact that Gage arranged

---

**18.** This reference to an undefined "others" is not a sufficient allegation to support the member-ship of such persons or entities in the enterprise.

such loans, and that these loans come from BancTexas, does not itself create an enterprise.

Gage's arrangement of loans is the alleged basis of the predicate acts. The cases make clear, however, that the enterprise must be separate from the commission of the predicate acts.[19] Insofar as end-borrowers were concerned, their relationship to Gage and BancTexas began and ended with their individual transactions. They were not involved in the Marriott loan or the Yates purchase, or even transactions with any defendants other than Gage and BancTexas (and, on occasion, Nash). Insofar as Dennis is concerned, there is no allegation that she was involved in any way other than as a recipient of part of the Yates' mineral interests. RS at 25–26.

It is true that continuity in membership allows for new members that replace the old, but they must perform the same roles as the old. *See Bledsoe*, above, 674 F.2d at 665. Here, however, no new members are alleged to have replaced the old. Without this replacement, the involvement of Gage is not enough to create the requisite continuity. The Yates purchase and the Marriott loan are distinct from the non-Marriott loans.

(C). *No Discrete Marriott–Yates Enterprise*

Nor is there an enterprise encompassing only the Marriott loan and the purchase of Yates for the Collins Children's trust. Collins states by affidavit that prior to the filing of the lawsuit, he was not aware of Edwards' involvement with the ranch, Boswell's or Edwards' asserted interests in the ranch, or any dealings between Boswell and Bennett–Carder for purchase of the ranch. Supplemental Affidavit of Steven Collins ¶¶ 2, 3. He also states that until the ranch was transferred to Harnage, Gage did not tell him of the Marriotts or their desire to buy the ranch. Affidavit of Steven Collins ¶ 2. Harnage, too, was not aware of Marriott interest in buying the

ranch or the loan. Affidavit of Norman G. Harnage ¶¶ 4, 9. None of the Collins defendants had ever dealt with BancTexas. Collins Supp. Aff. ¶ 5; Harnage Aff. ¶¶ 4, 6. In contrast to these affidavits, the plaintiffs make only conclusory allegations. When proper summary judgment evidence challenges unsupported allegations, summary judgment is warranted. *In re Lewisville Properties, Inc.*, above, 849 F.2d at 950–51.

Furthermore, to establish a Marriott loan-Yates purchase enterprise, the plaintiffs would have to show an ongoing decision-making structure. No such structure is alleged. Even if Gage directed the bank to demand the property appraisal, and even if Gage negotiated with Bennett–Carder to buy the ranch, the plaintiffs have not alleged that Gage directed the Collins defendants to purchase the ranch, or controlled the way in which they did so. In sum, Gage's aid in arranging the Collins purchase does not amount to a distinct decision-making structure.

Another essential element, continuity in purpose, is also absent. At most, plaintiffs have alleged an enterprise whose initial purpose was to assist them in obtaining financing, presumably because of Gage's desire to earn loan points and the bank's desire to earn interest, but whose ultimate purpose was just the opposite—to thwart their purchase of the Yates ranch.

In any event, all of the predicate acts involving the enterprise allegedly occurred in relation to plaintiffs' application for a loan, before the Collins defendants took steps to purchase the ranch. There is no evidence, therefore, of an enterprise bridging the Marriott loan and the Collins' purchase.

(D). *Summary*

The plaintiffs have alleged a disjointed series of snapshots. The only common element is that Gage is in each one. Otherwise, there is no continuity of membership, no continuity of purpose, no enterprise dis-

---

**19.** In addition, for purposes of 18 U.S.C. § 1962(c), RICO "persons"—here, Gage and the bank—cannot be the enterprise. *Bishop v. Cor-*

*bitt Marine Ways, Inc.*, 802 F.2d 122, 123 (5th Cir.1986).

tinct from the commission of the predicate acts, and no ascertainable decision-making structure in the enterprise as alleged, or between any combination of its members.

## 2. Deficiencies Under 18 U.S.C. § 1962(a)

This statute prohibits the use or investment of income derived from a pattern of racketeering activity to acquire an interest in, or operate, an enterprise engaged in, or the activities of which affect, interstate commerce.

### (A). *The Collins Defendants*

■ The plaintiffs allege three possible § 1962(a) violations involving the Collins defendants. First, they allege that Steven Collins used the income from the Yates mineral interests to invest in the Collins Children's Trust. RS at 80. The trust, however, is not an enterprise. Nor is there any allegation that the trust was involved in interstate commerce.

■ Second, they allege that Steven Collins used benefits obtained by Gage from the Elenburg drilling activities to conduct drilling activities through Mega Resources. RS at 80. Even if this were a § 1962(a) violation, the alleged predicate acts, which related to the Elenburg activities and Collins' obtaining of benefits, did not injure the plaintiffs. Nor did the conduct of the Mega Resources activities. Consequently, under *Sedima,* the plaintiffs cannot assert this ground as a § 1962(a) claim. *See* note 17, above.

Third, they allege that the Collins defendants received income from the Yates mineral interests which was used to acquire an interest in and to operate an asso-

ciation in fact enterprise. RS at 62. As explained above, however, no RICO enterprise composed of any or all of the members alleged has been demonstrated. Without an enterprise, this third allegation must fail.[20]

### (B). *The Bank Defendants*

■ The plaintiffs allege that BancTexas received payments of principal and interest on various loans and that the BancTexas group enjoyed enhanced stock value from artificial loan activity and illegal income.[21] The plaintiffs further allege that the bank defendants received income from a pattern of racketeering activity involving these loan transactions and used it to re-lend funds to "Gage and his accomplices" in acquiring an interest in the enterprise. RS at 62–63. No enterprise has been shown, however, for the reasons explained above. Additionally, the alleged predicate acts involving the loan transactions that comprised the pattern of racketeering activity did not involve the plaintiffs and did not injure them.

### (C). *The Gage Defendants*

■ The plaintiffs allege that Gage invested income from the non-Marriott loans to operate the Texas store and salvage operations, that the payments on the oil and gas loans were used to enlarge the oil and gas holdings of Gage Resources, and that funds advanced to Wood were used by him to operate his dealership and to pay Gage's override. RS at 79–80. However, none of the § 1962(a)-prohibited predicate acts involving these operations caused the plaintiffs' injury.

The plaintiffs also allege that the Gage defendants invested income derived from the pattern of racketeering activities to ac-

**20.** Even if there were an association in fact enterprise, the plaintiffs have alleged no facts indicating that the Collins defendants acquired an interest in, or operated, it. The § 1962(a) violation portrayed by plaintiffs, i.e., the Collins defendants' investment in the enterprise of income derived from their Yates mineral interests, depends on events occurring after the Collins defendants closed on the ranch and developed the mineral interests. The persons constituting the enterprise are alleged to have committed all of their predicate acts, however, before this closing occurred. It appears chrono-

logically incredible, if not impossible, for the Collins defendants to have used their income from the Yates ranch to operate or acquire an interest in an "enterprise" which had already committed all of the predicate acts that injured plaintiffs.

**21.** Nash is not alleged to have violated § 1962(a), or to have received income and invested or used it in a manner prohibited by that statute. RS at 80.

quire, establish, and operate the enterprise and its business activities. RS at 62. The allegation echoes only the language of the statute; no specific allegations are provided in response to the Court's order to "[d]escribe in detail the alleged enterprise." RS at 61. Furthermore, as explained above, no RICO association in fact enterprise composed of any or all of the members alleged has been shown.

### 3. Deficiencies Under 18 U.S.C. § 1962(b)

The plaintiffs allege that the Collins defendants acquired an interest in or control of the amorphous enterprise. RS at 81. In the absence of an enterprise, this allegation obviously fails. Moreover, the plaintiffs do not allege facts indicating how the Collins defendants acquired this interest or control.[22]

The bank defendants are alleged to have maintained an interest in, or control of, virtually all enterprise activities through loans, promissory notes, and security interests. RS at 81. This allegation, too, must fail for want of an enterprise. It also does not apply to Nash and BancTexas Group, because they did not loan the money or take back the notes or interests. Furthermore, because the allegation does not involve injury to the Marriotts, it cannot be the basis for their RICO claim.

Gage is alleged to have used funds from the loans to gain interests in various operations. RS at 80–81. While these operations may arguably constitute enterprises, the allegation does not involve injury to the Marriotts, and therefore cannot be a basis for their claims. Gage is also alleged to have acquired an interest in the amorphous association in fact. RS at 62. This allegation is insufficient for two reasons. One, the plaintiffs do not state what Gage did; they only recite the statute's language. Second, no enterprise has been established.

### 4. Deficiencies Under 18 U.S.C. § 1962(c)

All of the § 1962(c) allegations fail because they involve the non-existent enter-

prise. Furthermore, insofar as any of the allegations involve the non-Marriott loans, they do not involve injury to the Marriotts.

### 5. Deficiencies Under 18 U.S.C. § 1962(d)

§ 1962(d) prohibits a conspiracy to violate subsections (a), (b), or (c) of § 1962. A RICO conspiracy requires the existence of an enterprise. *Manax*, above, 842 F.2d at 812. Demonstration of that element has already been found deficient. Moreover, the plaintiffs cannot sue based on transactions which did not involve them and therefore could not have injured them. Consequently, there can be no claim based on a § 1962(d) conspiracy to commit the non-Marriott loan transactions.

The conspiracy allegation is also deficient with regard to the Collins defendants because the plaintiffs have alleged no facts indicating that they agreed to commit the predicate acts of racketeering. Such an agreement is "vital" to a § 1962(d) claim. *United States v. Cauble*, 706 F.2d 1322, 1341 n. 64 (5th Cir.1983), *cert. denied*, 465 U.S. 1005, 104 S.Ct. 996, 79 L.Ed.2d 229 (1984). Moreover, insofar as the fraud claims are concerned, the plaintiffs have not alleged facts supporting scienter. *See* above at 739–740. The degree of intent necessary for conspiracy participation "must be *at least* equal to that required for the substantive offense itself" (emphasis in original). *Martino*, above, 648 F.2d at 394.

### E. Conclusion

The absence of any RICO predicate acts under 18 U.S.C. § 1962 defeats the plaintiffs' RICO claims. Even if some of the conduct involving the non-Marriott loans could be construed as predicate acts (or, in the language of RICO, "acts of racketeering activity," 18 U.S.C. § 1961(5)), the record does not establish that they were part of the same *pattern* of racketeering activity as the Marriott–Yates transaction.

No enterprise is shown by this record, and no injury to plaintiffs have been shown

---

**22.** They also allege that these defendants acquired interests in oil and gas properties. RS at

**81.** However, the statute requires the acquisition of an interest in an *enterprise*.

by the non-Marriott loans, even if they constituted RICO-prohibited activity.

For these reasons, defendants are entitled to summary judgment on plaintiffs' claims under RICO, 18 U.S.C. §§ 1961 *et seq.*

### III. *Pendent Jurisdiction*

 The court declines to exercise pendent jurisdiction over the remaining claims, all of which arise exclusively under state law. There are two independent grounds for doing so. First, the single federal claim has been dismissed before trial. Therefore, the state law claims should be dismissed without prejudice. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). Second, aside from the RICO claim, "state issues substantially predominate" in this case.[23] Consequently, this court is justified in declining to exercise pendent jurisdiction and dismissing the state law claims without prejudice.[24] *Id.*

### IV. *Motion to Amend*

The plaintiffs have also moved for leave to amend their complaint so that the court could consider the legal and factual matters contained in the RICO case statement and the appendix. Because the court ordered the filing of the RICO statement to obtain detailed information about the case, it can consider these matters without amendment of the pleadings, and has done so. Plaintiffs' motion for leave to amend is DENIED.

SO ORDERED.

---

**23.** The Marriotts assert claims of common law fraud, breach of contract, tortious interference, and breach of fiduciary duty.

**24.** *See Pan Eastern Exploration Co. v. Hufo Oils,* 855 F.2d 1106, 1120, 1141 (5th Cir.1988):

Virtually every party in the case was a citizen or resident of Texas, and almost every claim was based on Texas law. Federal jurisdiction, however, was pegged on a claimed violation—apparently *de rigeur* in commercial litigation these days—of the federal RICO statute, with the remainder of the massive case dangling ponderously below, suspended by the doctrine of pendent jurisdiction.

\* \* \* \* \* \*

If this case ever belonged in federal court, we wonder whether it continues to; all federal issues are gone, and should the parties desire to try the case to another jury from scratch, the district court should consider whether there remains a sufficient level of judicial economy to maintain pendent [sic] jurisdiction over the case.

(footnote omitted).