Constance I. DUBROFF, et al.,
Plaintiffs–Appellants,

v.

Duncan D. DUBROFF, et al.,
Defendants,

Don M. Kennedy, et al.,
Defendants–Appellees.

No. 86–2798.

United States Court of Appeals,
Fifth Circuit.

Dec. 8, 1987.

Charles W. Getman, Robert N. Hinton, Houston, Tex., for plaintiffs-appellants.

D. Gibson Walton, D. Ferguson McNiel, Vinson & Elkins, Houston, Tex., for defendants-appellees.

Before GEE and JOHNSON, Circuit Judges.*

GEE, Circuit Judge:

Constance DuBroff and her wholly-owned corporation Sedergo Unlimited, Inc. sued her former husband Duncan DuBroff, his wholly-owned corporation DuBroff Energy Corporation, several of his business associates and his lawyers in federal district court. Mrs. DuBroff alleged that the defendants conspired to defraud and in fact defrauded her of community property in the course of a divorce settlement. She alleged that their actions violated federal securities laws and regulations, *see* 15 U.S. C. § 78j(b) and 17 C.F.R. 240.10b–5, as well as federal racketeering statutes, *see* 18 U.S.C. § 1961 *et seq.*

During their marriage, Mr. and Mrs. Du-Broff each held 50% of the stock of Du-Broff Energy Corporation ("DEC"). DEC bought, managed and explored for various oil, gas and mineral interests. At the time of their divorce, Mr. and Mrs. DuBroff agreed to split the assets of DEC between two corporations: Duncan DuBroff would own 100% of DEC, and Constance DuBroff would own 100% of Sedergo, a new entity created for the purpose. The transaction was structured like this: Sedergo was formed and it issued 100% of its capital stock to DEC in exchange for approximately half of DEC's assets. DEC then transferred all of Sedergo's stock to Constance DuBroff in exchange for all her holdings in DEC. As a result, Duncan DuBroff ended up owning all of DEC, which in turn held

---

* Due to his death on October 19, 1987, Judge Hill did not participate in this decision. This case is being decided by a quorum. 28 U.S.C. § 46(d).

about half of its original assets; Constance DuBroff ended up owning all of Sedergo, which in turn owned about half of DEC's original assets. This transaction closed in December 1982 and the divorce decree incorporating the property settlement was entered in January 1983 in Montgomery County District Court.

After the divorce, Sedergo's participation in continuing or new ventures with DEC and other business partners did not go smoothly. The parties accuse each other of various misdoings irrelevant to the case as it comes before us, but at least two of the predicate RICO acts are alleged to have occurred *after* the closing of the property settlement in December 1982 and the incorporation of the settlement into the divorce decree in January 1983. At some point, Constance DuBroff decided that she had been deceived: that her ex-husband had lied to her, concealing various corporate opportunities of DEC under the guise of entities of whose existence she was unaware at the time of the divorce.

In consequence Mrs. DuBroff brought this suit, alleging that the property settlement transaction included a fraudulent scheme in connection with the sale of securities in violation of federal law and that the various defendants had violated RICO by predicate acts of mail, wire and state-law fraud. After long delays in the federal motions practice, she sought a bill of review in the Montgomery County District Court on the basis of alleged "extrinsic" fraud in the divorce settlement. She then settled with most of the defendants—her ex-husband, several business partners and associates, DEC, and other corporate entities—in exchange for her voluntary dismissal with prejudice of both state and federal proceedings against them. As a result, only her husband's lawyers and their firm (the "lawyer defendants") remain as defendants (and appellees) in this case. Eventually, the trial court dismissed this case as *res judicata* because "the actions complained of were all approved by a Texas state court in a divorce decree...." Mrs. DuBroff and her corporation appeal.

*Texas Law: Fraud and Res Judicata*

"It is now settled that a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the state in which the judgment was rendered." *Migra v. Warren City School District Board of Education*, 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984); *see also A.L.T. Corp. v. Small Business Administration*, 801 F.2d 1451 (5th Cir.1986) (discussing "full faith and credit" statute 28 U.S.C. § 1738). Therefore, we look to Texas law to see if Constance DuBroff can avoid the binding effect of the divorce decree.

Texas courts do not always apply *res judicata* with great strictness to second claims raising a new allegation of fraud. For example, in *Jeanes v. Hamby*, 685 S.W. 2d 695 (Tex.App.—Dallas 1985, writ ref'd n.r.e.), the plaintiff won judgment in an earlier suit against the defendants as guarantors of certain notes but had tremendous difficulty collecting his judgment. In this case, he alleged a "continuing fraudulent conspiracy by appellees [defendants] to assure that he would never recoup his money in the form of continuing actions by appellees to prevent collection of his judgment." The fraudulent conspiracy was alleged to have begun before and continued after the first judgment. After reviewing two cases that construed *res judicata* rather narrowly, the Texas court concluded:

[W]e hold that even though [plaintiff] Jeanes' cause of action for fraudulent conspiracy arose from some of the same events which gave payment on the note, the two causes of action depend upon the determination of altogether different factual and legal questions and are sufficiently distinct so as to prevent the doctrine of res judicata from precluding Jeanes' suit.

*Jeanes*, 685 S.W.2d at 699. It is apparent that *Jeanes* supports Mrs. DuBroff's theory in this case.

On the other hand, earlier cases emphasize the distinction between "intrinsic" and "extrinsic" fraud. Fraudulent misbehavior by a party to a prior suit cannot be successfully attacked if the fraud was "intrinsic,"

*i.e.*, part of the fraudfeasor's actions in the context of the earlier dispute or the suit itself. *See, e.g., Alexander v. Hagedorn,* 148 Tex. 565, 226 S.W.2d 996 (1950) (false statements made by plaintiffs to trial judge in prior default proceeding were intrinsic fraud that could not be used by defendant to upset the judgment in a bill of review proceeding); *see generally Browning v. Navarro,* 826 F.2d 335 (5th Cir. 1987) (discussing intrinsic/extrinsic fraud distinction). Moreover, when—as in this case [1]—the parties have reached a settlement or "agreed judgment" that explicitly waives any and all other claims, the Texas courts have not been receptive to a second attack. In *Vartanian Family Trust No. 1 v. Galstian Family Trust,* 724 S.W.2d 126 (Tex.App.—Dallas 1987), for example, the parties settled the prior action with a broad agreement covering "all claims, known or unknown." The court held that a claim of preexisting fraud discovered only after settlement is not enough:

> The fraud asserted to have been discovered by the Vartanians after the June 1981 judgment does not vitiate the res judicata effect of that order. *See McRae v. Turner,* 626 S.W.2d 351, 352 (Tex.App.—Fort Worth 1981, no writ). As stated in *McRae,* 626 S.W.2d at 352, "... [the] judgment otherwise persists [as] res judicata until set aside; and it cannot be attacked or set aside by any method save the exclusive remedy provided by bill of review. *McEwen v. Harrison,* 162 Tex. 125, 345 S.W.2d 706 (1961)." Although fraud is a ground for setting aside an agreed judgment, the other requirements for a bill of review, not alleged here, must also be alleged and proved.

*Vartanian Family Trust,* 724 S.W.2d at 128 (bracketed material in original).

In addition—although the parties do not cite them—our research reveals a number of Texas cases that deal directly with allegations of fraud in a divorce settlement. In *Chapman v. Chapman,* 591 S.W.2d 574 (Tex.App.—Fort Worth 1979, no writ), for example, the ex-wife brought a bill of review challenging the divorce property settlement. She claimed fraud in her ex-husband's valuation of their former community. The court held that the fraud, if present at all, was intrinsic, not extrinsic, and thus did not escape the rule of *res judicata:*

> The divorce decree in the instant case is very similar [to the decree in *Bankston v. Bankston,* 251 S.W.2d 768 (Tex. Civ.App.—Dallas 1952, mand. overr.)] as it embodied a property settlement agreement which was based on valuations of community property, most of which were ongoing as in *Bankston,* the husband had provided the wife with the material information of the value and nature of these concerns; and it was this information on which the wife relied in agreeing to the property division.

> \*    \*    \*    \*    \*    \*

> In order to vacate the judgment, the wife must fail unless she can show extrinsic fraud. As in *Bankston,* 251 S.W. 2d 768, 772, the fraud alleged at most relates to untruths which misled the wife into acquiescence and approval of an unjust division of property. Furthermore, assuming presentment that misrepresentations were made by the husband upon which the wife relied, the misrepresentations obviously bore only on matters at issue in the former trial (or which could have been at issue on that trial) and therefore amounted to no more than intrinsic fraud.

*Chapman,* 591 S.W.2d at 576, 577. *See also McRae v. Turner,* 626 S.W.2d 351, 352 (Tex.App.—Fort Worth 1981, no writ) (claim by ex-wife that ex-husband fraudu-

---

1. The property settlement includes the following clause:

     6.04. Each Party, except as otherwise provided for in this Agreement, releases the other from all claims. liabilities, debts, obligations, actions, and causes of action demand [sic] of every kind and description that have been incurred, related to, or arising from the mar- riage between the Parties. However, neither the husband or wife is relieved or discharged for any obligation expressly set forth in this Agreement, said obligations and covenants to survive this Agreement, and to be fully enforceable after the granting of the Divorce, or under any instrument or document executed pursuant to this Agreement ...

lently induced her to agree to property settlement by giving false valuation of certain retirement benefits; held: divorce settlement can be challenged only by bill of review; ex-wife unlikely to succeed in bill of review because her allegations are of intrinsic fraud only and *Chapman v. Chapman* controls). Like the ex-spouses in *Bankston, Chapman,* and *McRae,* Constance DuBroff complains of fraud in her husband's representations about their community assets, or, more precisely, about the assets of DEC, their family corporation. She claims that Duncan DuBroff diverted and hid certain corporate assets and lied by omitting to tell her about them. Thus, *Chapman* seems highly relevant and perhaps controlling.

There is, in addition, another line of divorce cases that deals with items of marital property omitted from express division on divorce. Most of these cases deal with the spouses' rights in retirement plans or pensions not mentioned in the divorce decree or divided at the time of the divorce. The Texas courts allow a subsequent action for partition of such property, without any allegation of fraud, and one court has explained that normal rules of *res judicata* do not apply to this type of post-divorce proceeding:

> The familiar aspect of the rule of *res judicata,* barring relitigation of issues which *might* have been litigated in the exercise of reasonable diligence and absent fraud, as well as those actually tried, evidently does not prevent partition of articles of community property omitted from express division or adjudication on divorce, *it being held that the parties become joint owners of such omitted articles.*

*Heisterberg v. Standridge,* 656 S.W.2d 138, 141 (Tex.App.—Austin 1983, no writ, final emphasis added). Mrs. DuBroff does not rely upon these cases, however, or attempt to assert that the allegedly fraudulently hidden assets of DEC were not part of the settlement and thus continue to be her property as joint owner under the theory of the pension cases.

Even in the *Heisterberg*-type case, however, collateral estoppel applies—that is to say, if the original decree explicitly mentions and apportions property rights in the pension or other property, whether correctly or incorrectly, the decree cannot be attacked in a second proceeding. *See Constance v. Constance,* 544 S.W.2d 659 (Tex. 1976). Although technically there may be no collateral estoppel of the fraud claims in this case, the broad waiver of "all claims, liabilities, debts, obligations, actions and causes of action" in the property settlement[2] was expressly incorporated in the Decree of Divorce by the state district court. Thus, a possible resolution of this matter would be a holding that, whatever the effect of *Heisterberg*-type divorce doctrine on divorce cases like *Chapman,* the broad waiver in this case was part of the decree and that, by analogy, *Constance* applies to bar further proceedings.

We are, however, a federal circuit court. As such we are hardly authorized to make innovative decisions shaping Texas family law. In addition, this case presents two more novel issues of great uncertainty. First, this action is now against the ex-husband's *lawyers;* their allegedly wrongful conduct was in concert with Duncan DuBroff, but they are not sued as his agents. None of the Texas cases even hint at whether the *res judicata* rules should be transmogrified into collateral estoppel rules protecting those not party to the divorce proceeding. Second, Mrs. DuBroff alleges the existence of a continuing RICO conspiracy, one that continued even after the closing of the property settlement transaction. Ordinarily, this new wrong would not be considered barred by the prior proceeding. *See, e.g., Blair v. City of Greenville,* 649 F.2d 365, 368 (5th Cir. 1981); *Kilgoar v. Colbert County Bd. of Education,* 578 F.2d 1033, 1035 (5th Cir. 1978). We find little guidance in this area of the law from Texas cases.

*Federal Courts and Texas Procedures*

Contemplating these numerous, difficult, and novel issues of Texas law, we are

---

2. *See supra* note 1.

strongly inclined to direct Mrs. DuBroff to the Texas courts for appropriate relief. The Restatement suggests that actions challenging prior judgments on the basis of fraud should be brought in the court where the judgment was entered. *See* Restatement (Second) of Judgments 26(2) & comment k (1981). In Texas, this suggestion is made mandatory: The only way to challenge a court-approved settlement or "agreed judgment" in Texas on the basis of fraud is to bring a "bill of review" in the original court.[3] *See Vartanian Family Trust,* 724 S.W.2d at 128; *McRae,* 626 S.W. 2d at 352.

In *Chapman v. Aetna Finance Co.,* 615 F.2d 361 (5th Cir.1980), a panel of our court held that it was not *required* by § 1738 to give effect to a state compulsory counterclaim rule that would have rendered a prior case *res judicata* because the state rule was "essentially procedural" and more like a "legislative act" than "an element of that state's judicial proceedings." The panel went on, however, to hold that as a matter of comity and of the federal court's policy the unlitigated counterclaim was barred. The first part of the holding of *Chapman* was effectively overruled in *Migra v. Warren City,* 465 U.S. at 84, 104 S.Ct. at 897, but it still supports a more limited rule that federal courts are not bound to follow the state's rule about which *forum* must entertain the second action.

Thus, there is probably no *requirement* under § 1738 that we dismiss Mrs. DuBroff's claim. There are, however, good reasons to do so as a matter of discretion and of comity between federal and state courts. Because the federal claims in this case arise out of a divorce proceeding, and because no Texas law to which we have been directed (or which we ourselves have discovered) gives even the faintest guidance as to how the Texas courts would treat an action against an ex-spouse's lawyers based on federal law, we conclude that this is one of those relatively rare cases in which abstention is appropriate.

*Abstention Under Burford v. Sun Oil Company*

In *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), the Supreme Court established the principle that some cases properly brought in federal courts should nevertheless be dismissed to the state courts for resolution because of a concern for comity between sovereigns. Underlying the decision is a recognition that the potential effects of certain cases on state administrative schemes are so important that resolution of them by the federal courts is unwise. The fact that Constance DuBroff sues based on federal law is not determinative of whether we should decline to exercise jurisdiction over the case. As we recently held:

> [W]e find that the absence of a state law claim in the instant case is not fatal to *Burford* abstention. The motivating force behind *Burford* abstention is not the desire to avoid a state law question, but rather, a reluctance to intrude into state proceedings where there exists a complex state regulatory system. As we have previously observed, *Burford*-type abstention requires neither the presence of a state law issue nor unclarity in pertinent state law. Rather, a court abstanting under *Burford* relegates a federal issue to state court jurisdiction because the federal issue touches some overriding state interest." *B.T. Inv. Managers v. Lewis,* 559 F.2d 950, 955 (5th Cir.1977).

*New Orleans Public Service v. City of New Orleans,* 798 F.2d 858, 861–62 (5th Cir.1986). In this case, of course, we have seen that there are indeed difficult questions of state law raised by the "full faith and credit" command of § 1738.

We conclude that abstention is appropriate here for a number of reasons. First, there is perhaps no state administrative scheme in which federal court intrusions are less appropriate than domestic relations law. "Even when a federal question is

---

**3.** This procedure is akin to a motion to reopen under Federal Rule 60(b)(3), although there is

no time limit as in Rule 60(b).

presented, federal courts decline to hear disputes which would deeply involve them in domestic matters." *Thompson v. Thompson,* 798 F.2d 1547, 1558 (9th Cir. 1986) (citing cases). "Appellant says the 'scheme' here at issue is less complex than those at issue in other [*Burford*] cases; but even were this true, the fact that 'family law' is at issue here makes 'abstention' particularly appropriate." *Friends of Children, Inc. v. Matava,* 766 F.2d 35, 37 (1st Cir.1985). Second, this case presents novel and dubious questions of state family law. For example, we have no idea whether Texas would allow an independent action for fraud and conspiracy in the property settlement against the divorce lawyers of an ex-spouse, particularly when the ex-spouses have settled their own disputes. All of Constance DuBroff's rights against others involved in reaching the divorce settlement may be derivative from her rights against her husband. This question could have important and far-reaching implications for divorce law and for the Bar in Texas; an incorrect decision by our Court could well be "disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 814, 96 S.Ct. 1236, 1245, 47 L.Ed.2d 483 (1976) (discussing *Burford* abstention). Third, all of Mrs. DuBroff's federal claims can probably be brought in the state court action. Although there is authority in Texas to the contrary, the great weight of authority in the lower federal courts is that RICO claims come within the usual presumption that federal jurisdiction is concurrent and not exclusive and that RICO, like most federal statutes, is thus enforceable in state courts. *See Carmen v. First National Bank of Louisville,* 642 F.Supp. 862, 864 (W.D.Ky.1986) (state courts have concurrent jurisdiction over RICO); *HMK Corp. v. Walsey,* 637 F.Supp. 710, 717 (E.D.Va. 1986) (same), *aff'd on other grounds,* 825

F.2d 1071 (4th Cir.1987); *Karel v. Kroner,* 635 F.Supp. 725, 731 N.D.Ill.1986) (same); *Charles Kurz Co. v. Lombardi,* 595 F.Supp. 373, 381 & n. 11 (E.D.Pa.1984) (same); *Luebke v. Marine National Bank of Neenah,* 567 F.Supp. 1460, 1462 (E.D. Wis.1983) (same); *but see Broadway v. San Antonio Shoe, Inc.,* 643 F.Supp. 584, 586 (S.D.Texas.1986); *Main Rusk Associates v. Interior Space Constructors,* 699 S.W.2d 305 (Tex.App.—Houston [1st Dist] 1985, no writ). Moreover, the California Supreme Court has held that state courts have concurrent jurisdiction over RICO and the 7th Circuit has hinted that it would so hold. *See Cianci v. Superior Court,* 40 Cal.3d 903, 908, 221 Cal.Rptr. 575, 576, 710 P.2d 375, 376–82 (1985); *County of Cook v. Midcon Corp.,* 773 F.2d 892, 905 n. 4 (7th Cir.1985). We think that this view is likely to prevail in Texas as well.[4]

Even a quick search reveals several cases where *Burford* abstention has been invoked in cases involving domestic matters. For example, in *Petersen v. Petersen,* 640 F.Supp. 719 (S.D.N.Y.1986), the court noted:

> Where federal adjudication would interfere with state policy in an important matter of local concern, the Supreme Court has long found abstention appropriate. *Burford v. Sun Oil Co.* Matrimony and divorce are subject to extensive and intricate regulation by the various states, and state courts have developed particular competence in adjudication of these issues. Federal court intervention in this case would not only infringe on core state concerns and risk inconsistent state and federal adjudications, but would require "exploration of a difficult field of New York law with which, because of its proximity to the exception for matrimonial actions, federal judges are more than ordinarily unfamiliar." *Phillips, Nizer, Benjamin,*

---

**4.** If the Texas courts ultimately hold that Mrs. DuBroff's claims are not barred by *res judicata* or collateral estoppel, but that nevertheless RICO is unenforceable in Texas courts, our decision to abstain in this case would not necessarily bar a subsequent suit in federal court on the

grounds that federal court is the only forum where a remedy is available. In that case, the Texas courts will have resolved the difficult state-law issues, eliminating the need for abstention, and the federal court can proceed.

*Krim & Ballon v. Rosenstiel,* 490 F.2d 509, 515 (2d Cir.1973) (Friendly, J.).

*Petersen,* 640 F.Supp. at 721 (citations added and omitted); *see also Friends of Children,* 766 F.2d at 37.

On *Burford* considerations, we therefore abstain, remanding the case to the district court for dismissal without prejudice so that Mrs. DuBroff may, if she wishes, pursue her state and federal claims against the lawyer defendants in Texas state courts. It is so

ORDERED.